UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
INTERGLOBO CUSTOMS BROKER, INC.,          :

               Plaintiff,          :

        -against-          :          **MEMORANDUM AND ORDER**

HERSCHEL IMPORTS, INC. a/k/a HERSCHEL          :          14-CV-4995 (KNF)
IMPORTS CORPORATION AND UNITED
STONES INTERNATIONAL, INC.,          :

             Defendants.          :
------------------------------------------------------------X
UNITED STONES INTERNATIONAL, INC,

                        :

         Counter Claimant,          :

        -against-          :

INTERGLOBO CUSTOMS BROKER, INC.,          :

         Counter Defendant.          :
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## BACKGROUND

The plaintiff, Interglobo Customs Broker, Inc., commenced this action for damages,

asserting claims for an account stated and breach of contract against Herschel Imports, Inc. a/k/a

Herschel Imports Corporation and United Stones International, Inc. ("USI"). On November 20,

2014, the Clerk of Court entered a default against Herschel Imports, Inc. a/k/a Herschel Imports

Corporation. On November 25, 2014, the plaintiff made a motion for summary judgment against

USI, pursuant to Rule 56 of the Federal Rules of Civil Procedure. On December 30, 2014, USI

opposed that motion, making a cross-motion for leave to file an amended answer and

counterclaim and for counsel fees and costs, which the plaintiff opposed.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

***Plaintiff's Motion for Summary Judgment***

The plaintiff contends that summary judgment is warranted because, in its answer to the amended complaint, "USI admits that it owes $33,465.87 to Plaintiff," and "a formal judicial admission is conclusive against the party that makes the admission." The plaintiff asserts that, even without USI's admission, USI is liable to the plaintiff for that amount on its account stated claim because USI did not object to the plaintiff's invoices, "dated November 2013 and early to mid-2014."

The plaintiff contends that USI is liable for the plaintiff's invoices for brokerage services and duties paid because the plaintiff's "brokerage services were performed and billed pursuant to the POA [Power of Attorney] and the Standard Terms and Conditions of Services, which govern the contractual relationship between Interglobo and USI." The plaintiff maintains that, "as shown in the Entry Summaries annexed to Interglobo's affidavit[1] in support of this motion, USI is listed as the importer of record on each of the relevant Entry Summaries filed with the U.S. Customs." According to the plaintiff, the "POA" and the "Standard Terms and Conditions of Services" are "clear in that the compensation of Interglobo for its services shall be included with and is in addition to the rates and charges of all carriers and other agencies selected by Interglobo to transport and deal with the goods." The plaintiff asserts that, "regardless whether Interglobo, per USI's instruction, sent invoices to Herschel, USI is still" entitled to recover "$18,234.06 from USI."

---

[1]  The plaintiff submitted no affidavit in support of its motion but submitted two declarations.

The plaintiff contends that USI is liable for the plaintiff's invoices for transportation charges, because "[u]nder each of the relevant bills of lading is [sic] suit, USI is the consignee of the cargo," and the plaintiff's bill of lading defines "Merchant" as the consignee of the cargo. The plaintiff maintains that "Section 17 of the bill of lading provides that the Merchant (and therefore the consignee) is responsible for the Charges relating to the bill of lading." Furthermore, "the bills of lading at issue are stamped 'freight collect,'" and the plaintiff "is entitled to recover $33,449.63 from USI, as consignee." The plaintiff contends it is entitled to attorney's fees because "the parties have entered into the POA, which incorporates the Standard Terms and Conditions of Services, a binding agreement that provides" for reasonable attorney's fees and costs incurred in this litigation.

In support of its motion, the plaintiff submitted a declaration by: (a) Michele Lupo ("Lupo") the plaintiff's officer, with exhibits; and (b) Francesco Di Pietro, the plaintiff's attorney, with an exhibit. Lupo states that the following exhibits are attached to Lupo's declaration: (1) Exhibit A, "[a] true and correct copy of the POA [Power of Attorney] executed by USI"; (2) Exhibit B, "[t]rue and correct copies of Interglobo's invoices and Entry Summaries"; (3) Exhibit C, "[t]rue and accurate copies of the invoices and respective bills of lading"; (4) Exhibit D, "a true and correct copy of the back-side of Interglobo's bill of lading"; and (5) Exhibit E, "[t]rue and accurate copies of [the] invoices" sent by the plaintiff to USI "for brokerage and transportation services performed on behalf of USI in the total amount of $33,456.87." Lupo "also supplied a blank copy of the power of attorney form, as part of Exhibit A, to assist the Court in reading the original carbon copy of the POA." Concerning the plaintiff's Exhibit B, Lupo contends, in a footnote:

Invoices 6214, 190 and 618 contain charges for customs brokerage services to USI as importer of record, for which USI is liable as well as transportation services to Herschel as consignee, for which Herschel is liable.  Invoice 6214: USI is liable for $3,685.36 and Herschel is liable for $8,925; Invoice 190: USI is liable for $1,895.71 and Herschel is liable for $5,950; Invoice 618: USI is liable for $3,480.87 and Herschel is liable for $8,925.

### Defendant's Opposition to the Motion

Local Civil Rule 6.1 of this court provides that, on a civil motion under Rule 56 of the Federal Rules of Civil Procedure, "any opposing affidavits and answering memoranda shall be served within fourteen days after service of the moving papers." Local Civil Rule 6.1(b). "In computing any period of time prescribed or allowed by the Local Civil Rules or the Local Admiralty and Maritime Rules, the provisions of Fed. R. Civ. P. 6 shall apply unless otherwise stated." Local Civil Rule 6.4. "A paper is served under [Rule 5] by . . . sending it by electronic means if the person consented in writing—in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served." Fed. R. Civ. P. 5(b)(2)(E). "When a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)." Fed. R. Civ. P. 6(d). "In cases assigned to the ECF [Electronic Case Filing] system, service is complete provided all parties receive a Notice of Electronic Filing (NEF), which is sent automatically by email from the Court.  Transmission of the NEF constitutes service upon all Filing and Receiving Users who are listed as recipients of notice by electronic mail." Rule 9.1 of the Electronic Case Filing Rules & Instructions.

> Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced.  Any less rigid standard would risk encouraging a lax

attitude toward filing dates.   A filing deadline cannot be complied with, substantially or otherwise, by filing late-even by one day.

Houston v. Lack, 487 U.S. 266, 282,  108 S. Ct. 2379, 2388 (1988)(quotation marks and citation omitted).

This is an ECF action, which means that service is complete upon filing, provided all parties receive an NEF.  See Rule 9.1 of the Electronic Case Filing Rules & Instructions of this court.  The plaintiff's motion papers were served when they were filed electronically, on November 25, 2014.  The defendant had seventeen days after that date, namely until December 12, 2014, to serve its opposition papers.  See Local Civil Rule 6.1(b), Fed. R. Civ. P. 6(d).  On December 26, 2014, without seeking or obtaining authorization from the Court for an extension of time to serve its opposition papers after the expiration of the deadline to do so, the defendant attempted to file a document entitled "Defendant USI Notice of Cross-Motion for Leave To File an Amended Answer and Counterclaim and for Counsel Fees and Costs," with various attachments, including declarations and a memorandum of law, dated December 26, 2014. (Docket Entry No. 28).  On December 29, 2014, a docket entry error note was generated by the court's ECF system that Docket Entry No. 28 was deficient, explaining the deficiency: "Supporting Documents are filed separately, each receiving their [sic] own document #."

On December 29, 2014, the defendant attempted to file the same materials in the same manner, without following the instructions generated by the ECF system concerning them. (Docket Entry No. 29).  This filing prompted another docket entry error note, generated on the same date by the ECF system with additional instruction: "Supporting Documents are found under the Event Type - Replies, Opposition and Supporting Documents.  First refile Motion, then file and link any supporting documents.  Only the Proposed Order and Affirmation of Service can be attached to the Motion."

5

On December 30, 2014, the defendant filed: (a) "Defendant's Opposition and Response to Plaintiff's Statement of Material Facts" (Docket Entry No. 32); (b) "Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Cross-Motion for Leave to Amend Answer and Counterclaims" (Docket Entry No. 33); (c) "Declaration of Bhavin Shah in Opposition to Plaintiff's Motion and in Support of Defendant USI's Cross-Motion" (Docket Entry No. 34); (d) "Declaration of Counsel Seema M. Singh, for Leave to Amend USI's Answer and Counterclaim Based on Newly Acquired Evidence" (Docket Entry No. 35); (e) "Proposed Order Opposition to Summary Judgment Motion" (Docket Entry No. 36); (f) "Affirmation of Service," dated "12/26/14," (Docket Entry No. 37); and (g) "Defendant USI's Notice of Cross-Motion for Leave To File an Amended Answer and Counterclaim and for Counsel fees and Costs" (Docket Entry No. 38).  On December 30, 2014, the ECF system generated docket entry errors concerning the materials the defendant filed on December 30, 2014.  Subsequently, on that same date, the defendant filed its (i) "Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Cross-Motion for Leave to Amend Answer and Counterclaims" (Docket Entry No. 44); (ii) "Affirmation of Service," dated "12/26/14," (Docket Entry No. 45); and (iii) "Declaration of Bhavin Shah in Opposition to Plaintiff's Motion and in Support of Defendant USI's Cross-Motion" (Docket Entry No. 46).

As the docket sheet maintained by the Clerk of Court for this action shows, the defendant's opposition papers, due to be served on the plaintiff on December 12, 2014, were not filed until December 30, 2014.  Although the defendant's opposition papers were not filed correctly until December 30, 2014, the plaintiff received an NEF of the defendant's opposition,

generated on December 26, 2014, when the defendant first attempted to file its opposition papers.  Therefore, the plaintiff was served with the opposition papers, on December 26, 2014.

However, the defendant failed to seek and obtain an extension of time to serve the opposition papers after December 12, 2014.  Moreover, after the defendant became aware that its December 26 and 29, 2014 attempts to file the opposition papers were rejected by the ECF system, the defendant failed to bring these issues to the Court's attention, and failed to seek and obtain an extension of time to serve the opposition papers after the December 12, 2014 deadline. The defendant failed to: (a) provide any explanation for its late filings; or (b) explain why it continued to attempt to file the same materials in the same manner, rather than follow instructions generated by the ECF system.  Under these circumstances, to the extent that the defendant's "cross-motion" was interposed as its opposition to the plaintiff's summary judgment motion, it is rejected as untimely.  Consequently, no need exists to consider the plaintiff's reply.

*Legal Standard*

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A "dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  In determining whether a genuine issue as to any material fact exists, a "district court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000).  Additionally, "the court is not entitled to weigh the evidence" and "if there is any evidence in the record from any source from which a reasonable

7

inference could be drawn in favor of the nonmoving party, summary judgment is improper." Id.

Local Civil Rule 56.1 of this court provides that, on a motion for summary judgment, the movant must submit a statement "of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civil Rule 56.1(a). Each statement, pursuant to Local Civil Rule 56.1, "must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Under New York law, an account stated is an "agreed upon . . . balance of indebtedness," based on an implied or express promise of payment made by the parties to a transaction. Newburger-Morris Co. v. Talcott, 219 N.Y. 505, 512 (1916). "An essential element of an account stated is an agreement with respect to the amount of the balance due." Cameron Eng'g & Assoc., LLP v. JMS Architect & Planner, P.C., 75 A.D.3d 488, 489, 903 N.Y.S.2d 755, 755-56 (App. Div. 2nd Dep't 2010). To establish a breach of contract, the plaintiff must show: (1) "the existence of a contract"; (2) "the plaintiff's performance thereunder"; (3) "the defendant's breach thereof"; and (4) "resulting damages." Harris v. Seward Park Hous. Corp., 79 A.D.3d 425, 426, 913 N.Y.S.2d 161, 162 (App. Div. 1st Dep't 2010).

## Application of Legal Standard

In support of its motion, the plaintiff submitted Exhibit A, purporting to be a "copy of the POA executed by USI" together with "a blank copy of the power of attorney form . . . to assist the Court in reading the original carbon copy of the POA." The purported "copy of the POA executed by USI" is illegible, which the plaintiff recognized because it submitted "a blank copy of the power of attorney . . . to assist the Court in reading the original carbon copy of the POA."

Even assuming that "a blank copy of the power of attorney form" in Exhibit A is a true and
correct copy of a blank exemplar of the power of attorney form, which Lupo did not assert, the
blank exemplar contains the following language: "the foregoing power of attorney to remain in
full force and effect until the (7) _____day of _____, ___, or until notice of revocation in writing
is duly given to and received by the grantee."  Although Lupo contends that USI executed a
document entitled "Customs Power of Attorney," on October 11, 2012, Lupo did not identify the
expiration date of the document, if any, that exists in the original power of attorney.  Since the
purported power of attorney is illegible, it is not possible for the Court to discern what, if
anything, is written in the part of the document concerning the period of its validity.  Given that
the purported power of attorney is illegible, and the blank copy submitted "to assist the Court in
reading the original carbon copy" lacks material terms, including the date on which the
document ceased to be valid, the Court finds that the terms of the alleged power of attorney are
disputed.  Accordingly, granting summary judgment on the plaintiff's breach of contract claim is
not warranted.

Moreover, granting summary judgment on the plaintiff's account stated claim is not
warranted because the amount of money, if any, owed to the plaintiff by USI is disputed.
Referring to Exhibit B, the plaintiff contends that it is undisputed that USI owes to the plaintiff
"$18,234.06."  Exhibit B contains invoices by the plaintiff, addressed to "Herschel Imports,"
showing the following total amounts, Invoice No.: (1) ICB/006450, $1,956.79; (2) ICB/006214,
$12,610.36; (3) ICB/000146, $810.11; (4) ICB/000147, $718.07; (5) ICB/000190, $7,845.71;
(6) ICB/000618, $12,405.87; (7) ICB/000677, $1,202.28; (8) ICB/000678, $1,197.53;
(9) ICB/000679, $1,729.24; (10) ICB/000801, $75.00; and (11) ICB/000965, $1,483.50.  Lupo
contends, in a footnote, that on "Invoices 6214, 190 and 618 . . . USI is liable" for $3,685.36,

$1,895.71 and $3,480.87, respectively, while "Herschel is liable" for $8,925, $5,950 and $8,925, respectively. Lupo's contention about the amounts for which "USI is liable" or "Herschel is liable" is not a fact, but a legal conclusion, contained improperly in Lupo's declaration. A review of the "Invoices 6214, 190 and 618" contained in Exhibit B, shows that they do not support the amounts alleged by Lupo to be owed by USI. None of the invoices in Exhibit B addressed to "Herschel Imports" mentions what part of the amount due is associated with USI, if any, and what part with "Herschel Imports." Moreover, entry summaries attached to "Invoices 6214, 190 and 618," identifying USI as the importer of record, contain total amounts that do not correspond to the amounts Lupo claims are owed by USI on "Invoices 6214, 190 and 618": rather, they show: (a) $3,235.36, attached to invoice No. ICB/006214; (b) $1,745.71, attached to invoice No. ICB/000190; and (c) $2,880.87, attached to invoice No. ICB/000618. It appears that Lupo calculated the amounts allegedly owed to the plaintiff by USI by subtracting the amount for "ocean freight" from the total amount of each invoice. Lupo appears to assert that the amounts for "ocean freight," found on "Invoices 6214, 190 and 618," are owed to the plaintiff by "Herschel." However, no evidence was proffered to support Lupo's contentions about the amounts owed by USI, if any, or those owed by "Herschel." The plaintiff failed to explain why the alleged amounts owed by "Herschel" for "ocean freight" on invoices contained in Exhibit B, are not similarly owed by "Herschel" on any of the invoices contained in Exhibit C, although all invoices in Exhibit B and C are addressed to "Herschel Imports." In other words, the plaintiff did not explain why USI owes it for the alleged "ocean freight" amounts on invoices in Exhibit C, but not on those in Exhibit B. Lupo has no personal knowledge about "Herschel," since Lupo has not asserted having been employed by it, and the basis for his contentions concerning "Herschel" is unclear. Lupo's contentions about the amount(s) owed by USI are neither

10

explained nor corroborated by other evidence.  Thus, the Court finds that the amount, if any,

alleged to be owed to the plaintiff by USI, on the invoices contained in Exhibit B, is disputed.

The plaintiff contends that it is undisputed that it "transported USI's cargo to the United

States and billed the total amount of $33,449.63 for its services and expenses," referring to

Exhibit C as evidence in support of that contention.  Exhibit C contains the following invoices

by the plaintiff, addressed to "Herschel Imports," reflecting the following total amounts for

Invoice No.: (1) ICB/006209, $3,825.84; (2) ICB/006211, $4,147.09; (3) ICB/006212,

$3,924.06; (4) ICB/006213, $4,227.73; (5) ICB/006215, $3,931.18; (6) ICB/006216, $4,140.73;

(7) ICB/000524, $8,450.00; and (8) ICB/000788, $6,250.00.  The plaintiff does not explain how

it calculated the amount claimed to be owed by USI on invoices contained in Exhibit C,

"$33,449.63."  The sum of the total amounts of the invoices in Exhibit C is $38,896.63.  It is not

clear to the Court what $5,447, the difference between the sum of invoices in Exhibit C and the

purported amount owed by USI on the invoices in Exhibit C, represents.  Moreover, the plaintiff

does not claim, as it does concerning "Invoices 6214, 190 and 618" contained in Exhibit B, that

"Herschel Imports" owes the plaintiff for the "ocean freight" part of any invoice contained in

Exhibit C.  The Court finds that the amount owed by USI, if any, on the invoices contained in

Exhibit C, is disputed.

In paragraph No. 14 of its Rule 56.1 statement, the plaintiff contends it is undisputed

that: (a) it "directly invoiced USI for brokerage and transportation services performed on behalf

of USI in the total amount of $33,456.87"; (b) "[w]hile USI admits owing $33,456.87, it refuses

to pay"; (c) "[i]n the Answer, USI admits owing $33,456.87 to Interglobo for transpiration,

customs brokerage and related services set forth in this paragraph"; and (d) "the $33,465.87

amount presented by Exhibit E is in addition to the amounts found in Exhibits B and C."  Lupo

11

contends that: (i) "Interglobo also directly invoiced USI for brokerage and transportation services performed on behalf of USI in the total amount of $33,456.87"; (ii) "[w]hile USI admits owing $33,456.87, it refuses to pay"; (iii) "the $33,465.87 amount represented by Exhibit E is in addition to the amounts found in Exhibits B and C."  Paragraph No. 14 of the plaintiff's Rule 56.1 statement and Lupo's declaration, concerning the amount owed to the plaintiff by USI based on direct invoicing of USI, are internally inconsistent, creating a dispute about the exact amount owed, because two different amounts, both claimed to be undisputed, are contended to be owed to the plaintiff by USI: $33,456.87 and $33,465.87.  Contrary to the plaintiff's contention that it is undisputed that it directly invoiced USI for "the total amount of $33,456.87," Exhibit E shows that the total amount invoiced is $33,465.87.  Contrary to the plaintiff's contention that it is undisputed that "USI admits owing $33,456.87," in its answer, the defendant "admits the total owed is $33,465.87."  While it is possible that internal inconsistencies in paragraph No. 14 of the plaintiff's Rule 56.1 statement and Lupo's declaration about the alleged amount due to the plaintiff by USI are the result of the plaintiff's lack of care in preparing its motion papers, the Court cannot speculate.  See PPX Enters., Inc. v. Audiofidelity, Inc., 746 F.2d 120, 123 (2d Cir. 1984) ("Ambiguities must be viewed in the light most favorable to the party opposing the summary judgment.").  The evidence, namely, Lupo's declaration containing two different amounts alleged to be owed to the plaintiff by USI and Exhibit E, is contradicting with respect to the amount allegedly owed to the plaintiff by USI.  Accordingly, the amount owed, if any, on the invoices contained in Exhibit E, is disputed, and granting summary judgment on the plaintiff's account stated claim is not warranted.

**DEFENDANT'S MOTION FOR LEAVE TO AMEND ITS PLEADINGS**

Although the defendant's "cross-motion" is found to be untimely— to the extent it was

12

interposed untimely as an opposition to the plaintiff's summary judgment motion— the Court will consider the defendant's motion for leave to amend the pleadings independent of the plaintiff's motion, since no time limit exists for making such a motion, pursuant to Rule 15 of the Federal Rules of Civil Procedure.

### Defendant's Motion for Leave to Amend Its Pleadings

The defendant admitted in its answer that it owes the plaintiff $33,465.87.  The defendant's proposed amended pleading, entitled "USI's Proposed Amended Answer and Affirmative Defenses to Plaintiff's Amended Complaint and USI's Proposed Amended Counterclaims," is different from its original answer in that the defendant proposes to deny that it owes the plaintiff $33,465.87.  The defendant contends that "some of the documents attached to Plaintiff's motion papers are newly discovered evidence to USI which confirms that Plaintiff provided [an] inaccurate calculation of the amount due by USI."  According to the defendant, "the documents that are attached to Plaintiff's motion papers are clearly missing relevant bills of lading and Homeland Security Clearance forms which would support Plaintiff's claims against USI without any dispute," and "the documents produced by Plaintiff now provide USI with a different picture and USI has the right to amend its Answer and Counterclaims."  The defendant asserts that, "for the first time upon reviewing the invoices and limited supporting documents attached as exhibits to Plaintiff's motion for summary judgment, USI now realizes that Plaintiff's representations were false and in bad faith as revealed by the documents."  The defendant maintains that the admission it made in its answer that it owes the plaintiff $33,465.87 "was related to [a] pre-litigation negotiated global settlement agreement of any and all invoices owed and based upon the representations made by Interglobo and its counsel and without producing as proofs any invoices or supporting documents to USI."  The defendant asserts that

13

the "Plaintiff should not be able to take advantage of USI's good faith reliance on Plaintiff's fraudulent representations made during pre-litigation settlement negotiations and then use this evidence to fabricate additional inflated claims against USI." Furthermore, this is "essentially a collection matter," lacking "full documentation proving which Defendant allegedly owes what amount."

In support of its motion, the defendant submitted a declaration by Bhavin Shah ("Shah"), the sole "owner and CEO" of USI. Shah states that, prior to the commencement of this action, he engaged, without counsel, in negotiations with the plaintiff in an attempt to settle any outstanding amounts due by USI. Shah explains:

> In good faith, during these negotiations, I relied upon the representations of Interglobo and their Counsel regarding the amounts owed by USI. No invoices, bills of lading and Homeland Security Documents were provided by Interglobo to USI during these negotiations as support for the amount owed. USI, in good faith, was willing to pay the amount which Interglobo and its counsel represented that USI owed. I agreed to settle with Interglobo for the full and final settlement amount of $33,465.87 on behalf of USI. . . . However, this amount did not include any and all offers to which USI was entitled and which Interglobo owed due to USI as [a] result of Interglobo's illegal, improper and unauthorized clearance and withholding of USI's cargo through US Customs and related forwarding services for container number CT#APZU 3760731. . . . USI contracted and had a running account with Plaintiff to arrange for clearance of only certain cargo which USI authorized Plaintiff to clear through US Customs and related forwarding services on a shipment by shipment basis. Plaintiff invoiced USI for costs related to these authorized clearances only which included Freight, Duty Amount, Custom Clearance charges and other related expenses paid by Plaintiff on behalf of USI and or any other third party as identified in the Bills of Lading and Homeland Customs Clearance Forms. . . . Plaintiff was to pay all detention charges, demurrage charges and/or any other charges that were to be levied/applied to and in relation with that agreement for any and all pre-authorized cargo clearance only.

Shah contends that USI's settlement negotiations with the plaintiff "fell apart because of Interglobo's bad faith." According to Shah, USI did not agree with or authorize the plaintiff "to arrange for clearance of cargo through US Customs and related forwarding services for container

14

number CT #APZU 3760731," and, as a result of the plaintiff's conduct, USI incurred damages.

Additionally, Shah contends that he reviewed the plaintiff's invoices and bills of lading

produced to the defendant in this action and found them lacking "legitimacy in the absence of

the supporting bills of lading and the Homeland Security Forms that must accompany each

invoice as proof of the amounts reflected on Interglobo's self-serving invoices prepared by

Interglobo and identify the responsible party which they fail to provide."

Attached to Shah's declaration are: (1) Exhibit A, the plaintiff's demand letter to USI and

USI's "Confession of Judgment" sent to the defendant by the plaintiff's attorney; (2) Exhibit B,

"Documents relating to Interglobo's filing of the unauthorized customs clearance for container

number CT #APZU 3760731 and USI's repeated correspondence demanding Interglobo to

cancel same"; (3) Exhibit C, "[i]nvoices billed to USI which USI disputes due to Missing Bills

of Lading and the Homeland Security Clearance Entry Form verifying the legitimacy of the

amounts billed on the Invoice"; (4) Exhibit D, "[i]nvoices billed to Herschel with USI as

Importer of Record on the Homeland Security Documents" without "Bills of Lading";

(5) Exhibit E, "[i]nvoices billed to Herschel with USI as Consignee," without "Homeland

Security Customs Entry Forms"; and (6) Exhibit F, "[i]nvoices wrongly billed to USI," because

the "attached Bill of Ladings [sic] are not related to USI and the Homeland Security documents

are missing."

### Plaintiff's Opposition to the Defendant's Motion

The plaintiff contends that the defendant's "proposed amendment is futile in light of the

fact that un-admitting that USI owes $33,456.87[2] does not change USI's position in that an

---

[2] The defendant admitted in its answer that it owes to the plaintiff $33,465.87, not
$33,456.87, as the plaintiff contends.

account has been stated even without the admission." Moreover, the proposed amendment "would create an undue delay and force Interglobo to incur unnecessary legal fees to prove facts which have been already admitted by USI." The plaintiff asserts that the "proposed amendment is in bad faith as USI tries to stall collection of money clearly owed to Interglobo," and its motion is based "on the false assertions that USI's admission was induced by Interglobo's misrepresentations and on some unspecified new evidence."

*Legal Standard*

After the time to amend pleadings expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227 (1962)).

"A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir. 1985). However, a district court may disregard an admission in the pleading "if to accept it would be 'manifestly unjust or if the evidence contrary to the stipulation [is] substantial." PPX Enters., Inc., 746 F.2d at 123 (citation omitted).

*Application of Legal Standard*

Although the defendant admitted in its answer that it owes the plaintiff $33,465.87, Shah's declaration and the attached exhibits, which include the defendant's formal request to the

plaintiff to cancel custom entry for the container # APZU 3760731, demonstrate a substantial

basis exists for the Court to have a concern regarding the amount admitted by the defendant in its

answer. No scheduling order has been issued in this case, and the plaintiff's summary judgment

motion has been denied. As the case is in its early stage, the Court finds that no prejudice will

attend to the plaintiff from any delay that may result from the defendant's amendment. In light

of Shah's declaration and the accompanying exhibits, the Court finds that the proposed

amendment is neither futile nor made in bad faith. Accordingly, permitting the defendant to

amend its answer is warranted.

### CONCLUSION

For the foregoing reasons: (1) the plaintiff's motion for summary judgment, Docket

Entry No. 23, is denied; (2) the defendant's motion for leave to amend its answer and

counterclaims, Docket Entry No. 38, is granted.

Dated: New York, New York
      June 5, 2015

SO ORDERED:

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE